DAVID ORLICH, Individually and as Executor of ESTHER OR-LICH, Deceased, et al., Respondents, v HELM BROTHERS, INC., et al., Defendants, and MERCEDES-BENZ OF NORTH AMERICA, INC., Appellant.

First Department, August 16, 1990

APPEARANCES OF COUNSEL

*Susan T. Dwyer* of counsel *(Edward C. DeVivo* and *Mara B. Levin* with her on the brief; *Herrick & Feinstein,* attorneys), for appellant.

*Justin E. Driscoll, III,* of counsel *(Meyer & Driscoll,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

The decedent, Esther Orlich, a 49-year-old national sales manager for Jasmine Shoes, was driving to work on the New Jersey Turnpike in the extreme left lane of southbound traffic on the morning of June 22, 1988 in a leased 1987 Mercedes-Benz 300-E when the vehicle veered to the left, struck a guardrail, careened across the three southbound lanes and overturned after it left the roadway, colliding with a tree.

The decedent, the sole occupant of the vehicle, died two weeks later from the injuries sustained in the accident, survived by her husband and two children. This action, based on theories of negligent design, breach of warranty and strict products liability, was thereafter instituted to recover $20,000,000 in damages for wrongful death and conscious pain and suffering. While the police accident report lists, as a contributing factor, that the driver fell asleep, the complaint alleges that the accident occurred solely because the "frame, steering gears, axle, swing axle accelerator, cruise control, airbags, doors, body and * * * steering qualities [of the 1987 Mercedes-Benz 300-E sedan] were dangerous and defective." It

is undisputed that the vehicle was equipped with an airbag, which, although conflicting versions have been offered as to the reasons therefor, neither deployed nor inflated. The sole surviving defendant, Mercedes-Benz of North America, Inc. (MBNA), maintains that the accident involved a lateral impact of insufficient frontal force to activate the system. Plaintiffs claim a manufacturing defect. Photographs taken of the vehicle after the accident indicate some front-end damage, but are of such poor quality as to be virtually useless in discerning the nature and extent of such damage.

In addition to MBNA, the original defendants in the action included Daimler-Benz of North America, Inc., a nonexistent entity, and Daimler-Benz Aktiengesellschaft (Daimler-Benz AG.), a West German corporation alleged to be the vehicle's manufacturer. Daimler-Benz of North America, Inc. and MBNA were alleged to be wholly owned subsidiaries of Daimler-Benz AG. Only MBNA was served. By stipulation dated April 25, 1989, plaintiffs agreed to discontinue the action with prejudice against Daimler-Benz AG. and Daimler-Benz of North America, Inc., in exchange for which MBNA agreed that it would not allege or seek to prove at trial that the claims asserted against it should properly be asserted against those entities. The stipulation, to which plaintiffs were amenable in order to avoid the difficulties entailed in serving a foreign entity in West Germany in accordance with the dictates of the Hague Convention, made no provision as to the discovery of evidence from the West German manufacturer, Daimler-Benz AG.

By notice dated June 12, 1989, plaintiffs served their first document request, which was annexed to a notice to take the deposition of MBNA. Among the documents sought were all documents relating to the manufacture and sale of the subject vehicle as well as internal investigations and responses to external investigations of airbag failure, sudden acceleration and crashworthiness, consumer complaints, all reports of performance and operational tests relating to the vehicle's airbag unit and all documents relating to research and development as to the possibility of sudden acceleration due to cruise control malfunction and crashworthiness of the vehicle's side panels. MBNA refused, insisting that the document request was overbroad. In exchange for plaintiffs' withdrawal of the request, MBNA offered to produce a representative for deposition for the purpose of assisting plaintiffs in framing a document request.

On July 16, 1989, MBNA was deposed by Gary Bowne, who had inspected the subject vehicle after the accident. Bowne testified as to his reasons for concluding that the decedent had not been wearing her seat belt at the time of the accident. Plaintiffs' May 23, 1989 answers to MBNA's interrogatories, however, asserted that the decedent had been wearing the seat belt and had been so observed by the emergency medical technician who responded to the accident scene. At the deposition, Bowne produced the repair procedure manual, a maintenance booklet and owner's manual and an electrical troubleshooting manual for the 300-E model, as well as a brochure dealing with the airbag system.

Less than one month after MBNA's deposition, plaintiffs served a demand for the production of documents, dated August 10, 1989, which was virtually identical to their predeposition demand. The new demand included 27 numbered items, many of which were not limited to the vehicle or model type involved in the accident, and sought information relating to, *inter alia,* research and development, internal and external investigation, memoranda and correspondence, claims and complaints of other occurrences and testing and recalls with respect to the following five general theories of defect: failure of the airbag to deploy, sudden acceleration, cruise control malfunction, steering mechanism malfunction and lack of crashworthiness.

MBNA moved for a protective order vacating the demand in its entirety, arguing that plaintiffs, not having yet formulated a theory of liability against it, had served a blunderbuss document request in an improper effort to "discover" a theory of liability on which to proceed. Plaintiffs cross-moved to compel responses to their document demand and for leave to add Daimler-Benz AG. and its successor corporation, Mercedes-Benz Aktiengesellschaft (Mercedes-Benz AG.), as party defendants. Alternatively, plaintiffs requested that, if the court were to uphold the stipulation of discontinuance against Daimler-Benz AG., they should be allowed to serve a document request upon, and have access to witnesses of, Daimler-Benz AG. Plaintiffs argued that the latter request was necessitated by MBNA's deposition testimony that most of the documents sought were in the possession of the West German manufacturer and could not be produced by it. Plaintiffs argued that the stipulation was invalid as to Daimler-Benz AG. since at the time of its execution the action against that entity had not been commenced and that Mercedes-Benz AG.,

its successor, was not even mentioned in the stipulation. In reply, MBNA argued that the stipulation discontinuing the action against Daimler-Benz AG. with prejudice was a binding agreement between the parties, notwithstanding that at the time said defendant had not yet been served, and could be asserted by Daimler-Benz AG.'s successor, Mercedes-Benz AG. It further argued that discovery could not proceed against these foreign corporations, whether as parties to the action or otherwise, except pursuant to the provisions of the Hague Convention.

The IAS court granted MBNA's motion for a protective order with respect to those items which sought the production of documents relating to cruise control, sudden acceleration, crashworthiness and steering malfunction, holding that such discovery was unwarranted given "[t]he absence of anything in the record to support a claim that the accident was caused by unintended acceleration or any defect in the cruise control (even if it is assumed that it was being used at the time of the accident) or the structure of the vehicle" (146 Misc 2d 368, 373-374). With respect to plaintiffs' theory that the airbag was defective due to its failure to deploy at the time of the accident, the court permitted discovery of MBNA's and the West German manufacturer's records "not only for the 300-E, but all Mercedes-Benz passive restraint research" *(supra,* at 372) and ordered MBNA to produce documents relating to its research "on the role of safety belts in accident avoidance" *(supra,* at 372). The latter directive was based solely on the court's own theory (which it strongly suggested plaintiffs might adopt) that the decedent was not using her seat belt at the time of the accident but was, instead, "relying solely upon the air bag to provide automatic crash protection" *(supra,* at 369). This theory was, in fact, never alleged; it is not contained in any of the pleadings nor was it advanced anywhere in plaintiffs' motion papers or in oral argument. Indeed, as already noted, in their answers to MBNA's first set of interrogatories, plaintiffs responded "yes" to an inquiry as to whether the decedent was wearing her seat belt at the time of the accident, and identified Craig Oldershaw, an emergency medical technician, as the witness who would support that position. The police accident report also, in part, substantiates plaintiffs' claim in that regard.

■ ■ Using this self-generated theory as its premise, the IAS court, referring to sources outside the record, launched an assault on passive restraint systems in general, and, in partic-

ular, the airbag system in Mercedes-Benz vehicles, not for its failure to deploy, as alleged here, but, rather, for its enticement to drivers, in reliance thereon, to forego the use of seat belts. The court also refused to uphold the stipulation of discontinuance as against Daimler-Benz AG., ordering MBNA to produce documents in the possession of Mercedes-Benz AG., Daimler-Benz AG.'s successor corporation. Plaintiffs' cross motion to add Mercedes-Benz AG./Daimler-Benz AG. as a party defendant was granted; in the event, however, that MBNA complied with the court's discovery rulings, leave to add the additional parties would be denied, nunc pro tunc. We modify to limit further the discovery allowed and to express our disapproval of the court's usurpation of the advocate's role in delineating a theory of liability neither advanced by the parties nor supported by the record.

A court cannot go outside the record to fashion theories of liability or justify its own notions of culpability. In concocting its theory of airbag reliance to justify the production of airbag related material, the IAS court relied on materials and factual assumptions not found anywhere in the record. It used an article critical of airbags, not part of the record, as well as other outside sources, to support its conclusion that the airbag was not only useless but caused the decedent's death. When an outside source was not available, it made blanket factual statements as to the disadvantages of airbags without citation of any authority and ignored a record which contradicted the one essential fact necessary to support its reliance theory: plaintiffs contend that the decedent was wearing her seat belt at the time of the accident. Nor does this record contain the slightest indication of any misrepresentation about the utility of airbags so as to warrant the disuse of seat belts or, if such misrepresentation were made, that the decedent relied thereon or that such reliance would be reasonable. Moreover, as even the IAS court conceded, the Mercedes-Benz 300-E owner's manual states that the airbag system is merely a supplement to lap and shoulder belts and that airbags offer protection only in cases of front-end collisions. In any event, Mercedes-Benz's airbag design, manufacturing and testing information is irrelevant to the court's airbag-reliance theory since it would not shed any light on the issue of whether the decedent, who was obviously unaware of the contents of the voluminous information to be discovered, was wearing a seat belt and, if she was not, whether she was acting in reliance on the airbag system.

That the court went far beyond the issues before it and used its decision as a vehicle to criticize the use of airbags and as a lobbying effort is demonstrated by its "optimis[m] that the relative disadvantages and limitations of the airbag as a passive restraint will result in further legislative or administrative action to modify such devices from their present configuration or a voluntary decision by automobile manufacturers to install alternative systems of passive restraint which can stand alone, i.e. are not merely supplements." The court even went so far as, *sua sponte,* to warn of the possible environmental hazards of sodium azide, the chemical propellant used in the airbag system.

■ ■ The court's analysis was not only inappropriate but, in any event, unnecessary to a proper disposition of the discovery issue. The efficacy of the airbag system is clearly an issue in this action inasmuch as the photographic evidence is ambiguous as to whether the impact was a lateral or a frontal one. Thus, plaintiffs are entitled to discovery as to the design, manufacture and testing of the system. Items 1, 8, 13, 16, 20, 26 and 27 concern airbags only and should be upheld. Items 11 and 12 relate to warranties, including those from the airbag manufacturer, as well as sales documents, and are unobjectionable. Items 10, 24 and part of 19 concern crashworthiness, which, even under the court's analysis, should have been stricken.

■ ■ In seeking to effectuate an expeditious course of discovery in accordance with its view of the case, the court directed MBNA to obtain the cooperation of Mercedes-Benz AG., a nonparty, in securing the required documents. It justified its ruling with the observation that "[p]ursuant to [the] stipulation MBNA has obligated itself to defend this action and not to avoid its obligations by disingenuously suggesting that the plaintiff is litigating with the wrong Mercedes Benz entity." While MBNA may have agreed not to attempt to shift its potential liability to the West German manufacturer, it in no way assumed the defense of any other entity or the responsibility of producing discoverable items in the possession of the manufacturer. The clear, unequivocal language of the stipulation, executed by their respective attorneys, indicates that the parties never intended to impose any such condition on the with prejudice discontinuance of the action against Daimler-Benz AG. Where the intent to terminate an action without condition is so clearly manifested, the

court should not set aside the stipulation by reading into it undertakings never considered or articulated.

In nullifying the effect of a binding stipulation, the court effectively undermined the well-established policy favoring the nonjudicial resolution of legal claims. *(See, e.g., Matter of Beekman-Downtown Hosp. v Whalen,* 44 NY2d 124, 134; *Yonkers Fur Dressing Co. v Royal Ins. Co.,* 247 NY 435, 445.) By executing the stipulation, plaintiffs obviously bargained to avoid the intricacies of the Hague Convention and then realized, belatedly, that, by doing so, they had relinquished their opportunity to take discovery with respect to Daimler-Benz AG. as a party. But any difficulty in that regard is due solely to plaintiff's shortsightedness, hardly a basis for setting aside the stipulation. Contrary to plaintiffs' arguments, it is of no legal significance that at the time of the execution of the stipulation Daimler-Benz AG., although named as a defendant, had not been served in the action or that Mercedes-Benz AG., its successor, was not even mentioned in the stipulation.

■ Nor can discovery of Daimler-Benz AG./Mercedes-Benz AG.'s documents through MBNA be upheld on the ground, asserted for the first time on appeal, that MBNA is merely an agent of that West German entity *(cf., Delagi v Volkswagenwerk AG.,* 29 NY2d 426). Since that argument, which requires a factual basis, was not raised before the IAS court, we rejected it. *(See, Recovery Consultants v Shih-Hsieh,* 141 AD2d 272, 276.)* In any event, even on appeal, plaintiffs can only point to a "possible" common ownership and common directors and officers. This is patently insufficient.

■ Moreover, the court's discovery order, insofar as it directs the production of documents from the West German manufacturer through MBNA, ignored the Hague Convention and goes far beyond what would have been permissible if Daimler-Benz AG./Mercedes-Benz AG. was an actual party to the litigation. When discovery is sought from a nonparty in a foreign jurisdiction, application of the Hague Convention, which encompasses principles of international comity, is virtually compulsory. In 1987, the Supreme Court, in considering the interplay between the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (23 UST 2555, TIAS No. 7444) and the rules of procedure of Federal or State courts, concluded that, while the Hague Convention is not the exclusive means of obtaining discovery abroad, it should be resorted to when appropriate; in such cases, courts should scrutinize the particular facts, relevant sovereign inter-

ests and likelihood that resort to the Convention will prove effective. *(Société Nationale Industrielle Aérospatiale v United States Dist. Ct.,* 482 US 522, 544.) In that regard, the relevant factors underlying the concept of international comity are the importance to the litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternate means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or whether compliance would undermine important interests of the Nation where the information is located *(supra,* at 544, n 28). Since fact gathering is a judicially controlled process in civil law Nations such as West Germany, the nonjudicial taking of evidence located within their territory is regarded as an affront to their sovereignty. Such an exercise would be particularly offensive where, as here, the entity being subjected to the court-ordered fact gathering, i.e., Daimler-Benz AG./Mercedes-Benz, AG., is not even a party to the litigation. In ordering the production of documents from West German entities in support of its airbag-reliance theory, the court failed to respect the principles of international comity and the sovereignty of the Federal Republic of Germany and, finding its procedures to be "cumbersome", ignored the requirements of the Hague Convention. Plaintiffs' discovery requests with respect to the documents in the possession of the West German manufacturer must proceed according to the Hague Convention. *(See, Hudson v Hermann Pfauter GmbH & Co.,* 117 FRD 33 [ND NY]; *but see, Haynes v Kleinwefers,* 119 FRD 335 [ED NY].)

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered February 1, 1990, should be modified, on the law and on the facts and in the exercise of discretion, to the extent of granting defendant Mercedes-Benz of North America's motion for a protective order with respect to, and denying plaintiffs' cross motion to compel the production of items 10, 24 and those parts of 19 not relating to airbags; denying plaintiffs' cross motion to add Daimler-Benz AG. and/or Mercedes-Benz AG. as party defendants and directing that any discovery of such nonparties proceed pursuant to the Hague Convention and, except as thus modified, affirmed, without costs or disbursements.

Ross, Carro, Milonas and Rosenberger, JJ., concur.

Order, Supreme Court, New York County, entered on Febru-

ary 1, 1990, unanimously modified, on the law and on the facts, and in the exercise of discretion, to the extent of granting appellant's motion for a protective order with respect to, and denying plaintiffs' cross motion to compel the production of, items 10, 24 and those parts of 19 not relating to airbags; denying plaintiffs' cross motion to add Daimler-Benz AG. and/or Mercedes-Benz AG. as party defendants and directing that any discovery of such nonparties proceed pursuant to the Hague Convention and, except as thus modified, affirmed, without costs and without disbursements.