# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE CÔTE D'AZUR ESTATE
CORPORATION

)
)

C.A. No. 2017-0290-JTL

# OPINION

Date Submitted: September 16, 2022
Date Decided: November 18, 2022

Jeremy D. Anderson, FISH & RICHARDSON P.C., Wilmington, Delaware; *Counsel for plaintiff Lilly Lea Perry.*

Steven L. Caponi, K&L GATES, LLP, Wilmington, Delaware; *Counsel for defendant the BGO Foundation and for nominal party Côte d'Azur Estate Corporation.*

Dieter Walter Neupert; *Defendant pro se*.

**LASTER, V.C.**

Plaintiff Lilly Lea Perry has moved for the issuance of a letter of request to obtain the assistance of the central authority in Switzerland to facilitate discovery. Lilly seeks international assistance to obtain electronic data that Swiss investigators seized from the law office of Dieter Neupert, a defendant in this case, while investigating whether Neupert falsified evidence in a civil proceeding in Switzerland. A Swiss court determined that the investigators had reasonable cause to obtain the materials and that the investigators acted properly by only seizing evidence that was directly relevant to their investigation. The resulting evidence consists primarily of emails sent or received by Neupert and one of his assistants covering the period from May 1, 2015, through March 1, 2017 (the "Discovery Materials").

To obtain a letter of request, the movant must show initially that production would be ordered if the materials sought were subject to the court's jurisdiction. In one of her proposals, Lilly seeks all of the Discovery Materials. In an alternative proposal, Lilly only seeks the Discovery Materials to the extent that they touch on particular issues relevant to this proceeding. The court adopts the latter proposal which makes the materials sought plainly relevant. If the Discovery Materials were subject to this court's jurisdiction, the court would order them produced.

Whenever discovery involves a lawyer, there will be concerns about privilege. Here, those concerns are likely to be limited, because the investigators conducted a focused investigation and have stated that the Discovery Materials primarily implicate Neupert and his assistant, rather than clients. Additionally, privilege issues are unlikely to be of concern

1

because of the crime/fraud exception. This court has previously ruled that the actions Neupert took that form the basis for this case bear sufficient hallmarks of fraud to invoke the crime/fraud exception. The Discovery Materials were also seized as part of an investigation into a crime.

A party seeking a letter of request also must convince the issuing court to ask a foreign court for assistance, taking into account the burden that such a request necessarily imposes on the judicial system of another nation. Lilly has met her burden on that issue by showing that the letter of request is targeted and appropriate. The Discovery Materials have already been collected and are easily identifiable. Under Swiss law, a private plaintiff can obtain the Discovery Materials, and Lilly has shown that investigators have provided similar information to a private plaintiff in the past.

Although not required to secure the issuance of a letter of request, Lilly has shown that it will be difficult, if not impossible, to obtain the information through other means. To be sure, Neupert is a party to this case and ostensibly subject to compulsory process. But since April 2017, Neupert has failed to participate meaningfully in this proceeding. He is a foreign national who previously refused to be deposed, despite his status as a defendant. Because of his non-participation in an earlier phase of this case, the court drew an inference that any evidence that Neupert could have provided would be favorable to Lilly. Another powerful indicator of Neupert's non-participation is his failure to respond to Lilly's motion. Only the BGO Foundation has raised objections to the letter of request.

Lilly has made a convincing showing that Neupert would not produce the Discovery Materials if he had them, and the record suggests that he may no longer have them. The

2

investigators reported that they seized the Discovery Materials, not that they made copies of them. It is reasonable to infer that the only source is the investigators' files.

Lilly's motion is granted. The letter of request will issue.

## I. FACTUAL BACKGROUND

Non-party Israel Igo Perry died on March 18, 2015. He was survived by Lilly, his widow, and their two daughters, Tamar and Yael.[1] Mr. Perry's last will and testament named Neupert as the executor of his estate. Neupert is Swiss lawyer who was Mr. Perry's longtime advisor and confidant.[2] Neupert also was the architect of Mr. Perry's estate plan, which involved a complex network of entities called the "Structure." Louis Oehri & Partner Trust reg. ("LOPAG"), a Liechtenstein commercial trust company, formed and controlled all of the entities in the Structure. Neupert and Louis Oehri co-founded LOPAG in 1989, and they worked hand in hand to create the Structure and advise Mr. Perry.

Neupert and representatives of LOPAG told Lilly that when Mr. Perry died, he was

---

[1] My standard practice is to identify individuals by their last name without honorifics. When individuals share the same last name, my standard practice is to shift to first names. Using Mr. Perry's first name (Israel) can be confusing, because key events took place in the State of Israel. This decision therefore refers to him as "Mr. Perry."

This decision periodically uses terms such as "the Perry family" or "the members of the Perry family" to refer to Lilly, Tamar, and Yael. By describing the Perry family in this fashion, this decision is not suggesting that other individuals do not qualify as members of the Perry family under a broader definition.

[2] Although Mr. Perry named Neupert to the role of executor in his will, Lilly contested Neupert's ability to serve, and Neupert never secured authority to act as executor. Instead, Tamar and another individual were appointed as co-executors of Mr. Perry's estate.

3

the sole member of Côte d'Azur Estate LLC ("Côte d'Azur" or the "LLC"), a Delaware limited liability company. The LLC owned La Treille, a villa in the south of France (the "Villa"). Neupert and representatives of LOPAG told Lilly that the member interest in the LLC passed to Mr. Perry's estate and that she was the sole heir of the estate.

After Lilly, Tamar, and Yael disagreed about the disposition of Mr. Perry's wealth, Neupert and LOPAG tried to broker a settlement of those disputes. By June 2016, however, it was clear that the family members could not agree. The family divided into two factions, with Lilly and Tamar on one side and Yael on the other.

Neupert and LOPAG sought to force the family members back to the table by pressuring Lilly. To achieve that goal, they reversed their position about the ownership of the LLC, and they asserted that before his death, Mr. Perry transferred his member interest to the BGO Foundation (the "Foundation"), one of the entities in the Structure. As evidence of the transfer, they relied on a Deed of Assignment dated May 1, 2013. If the Foundation controlled the LLC, then Neupert and LOPAG could deny Lilly access to the Villa.

In June 2016, in an effort to bolster their new position about the ownership of the LLC, Neupert and LOPAG engaged in self-help. Neupert caused a Delaware registered agent to file a certificate of conversion with the Delaware Secretary of State that converted Côte d'Azur Estate Corporation ("Côte d'Azur" or the "Corporation").[3] Neupert also

---

[3] Note that the term "Côte d'Azur" may refer to the entity in either its earlier manifestation as the LLC or its current manifestation as the Corporation. Much of the time, the distinction does not matter, and so using "Côte d'Azur" promotes clarity. When the distinction matters, this decision strives to use one of the latter terms.

4

caused the registered agent to file a certificate of incorporation that authorized the issuance of 10,000 shares of common stock. There are documents which Neupert and LOPAG created later that purport to issue all of the Corporation's shares to the Foundation.

Starting in the second half of 2016, litigation broke out in various jurisdictions. In April 2017, Lilly filed this action. She contends that (i) the Deed of Assignment did not effectuate an immediate transfer of Mr. Perry's member interest in the LLC to the Foundation and (ii) Mr. Perry subsequently decided not to carry out the transfer because of adverse tax consequences in France. She maintains that Mr. Perry remained the sole member of the LLC when he died. Consequently, Neupert and LOPAG had no authority to convert the LLC into the Corporation or to issue shares of stock to the Foundation.

One of the early battles in the case concerned whether Lilly could name the Foundation as a defendant. When the Foundation moved to dismiss for lack of personal jurisdiction, the court held that Lilly had made a sufficient showing to conduct jurisdictional discovery. During jurisdictional discovery, the Foundation stipulated that Mr. Perry never executed any additional documents to implement the Deed of Assignment, and Dominik Naeff, a principal of both LOPAG and the Foundation, testified that the Deed of Assignment was never implemented. The discovery record included contemporaneous documents in which Naeff and Neupert acknowledged that the Deed of Assignment was never implemented. The Perry family and their advisors, including Neupert and Naeff, also represented to the French tax authorities that Lilly was the ultimate beneficial owner of the Villa. That only could have been true if the Deed of Assignment was never implemented and if Lilly stood to inherit the Villa as the sole beneficiary of Mr. Perry's will.

5

The court held a two-day evidentiary hearing to determine whether personal jurisdiction existed over the Foundation. The court then issued an opinion which concluded that the court could exercise personal jurisdiction over the Foundation because the Foundation had conspired with Neupert to commit torts that had a sufficient nexus to Delaware. *Perry v. Neupert (Jurisdictional Decision)*, 2019 WL 719000, at \*37 (Del. Ch. Feb. 15, 2019).

In reaching this conclusion, the court made findings of fact based on what the evidentiary record showed at that stage by a preponderance of the evidence. The court's factual findings included the following:

- Mr. Perry never executed the documents necessary to implement the Deed of Assignment. *Id.* at \*7.

- Mr. Perry decided not to complete the transfer to avoid adverse tax consequences in France. *Id.* at \*8.

- On March 28, 2015, Naeff wrote to the Perry family's advisors, including Neupert, that the Deed of Assignment "was never executed." *Id.* At the evidentiary hearing, Naeff testified that by "never executed" he meant "that this transfer has not been completed or finalized." Naeff Tr. 53.

- In August 2015, Neupert wanted to claim that the LLC had been transferred into the Structure. He and Naeff discussed whether they could use the Deed of Assignment to make such a claim, but they agreed that it had never been implemented. *Jurisdictional Decision*, 2019 WL 719000, at \*25.

- In August 2016, Neupert and Naeff claimed to have discovered the Deed of Assignment and that it had transferred the equity of the Corporation to the Foundation. *Id.* at \*17.

- To bolster their claim about the Deed of Assignment, Neupert and Naeff sought a legal opinion as to its effectiveness. When the law firm would not deliver the requested opinion Neupert fabricated documents. *Id.* at \*17–21.

6

- During late September or early October 2016, Neupert and Naeff fabricated a power of attorney and backdated it to February 5, 2016. *Id.* at *18.

- During December 2016, Neupert and Tanja Tandler, one of his personal assistants, created a board resolution and stock certificate, which they backdated to July 1, 2016. *Id.* at *21.

Based on these and other events, Lilly is pursuing claims for fraud, conversion, and tortious interference with contract against Neupert and the Foundation. She seeks a decree invalidating (i) the issuance of shares to the Foundation and (ii) the conversion of the LLC into the Corporation.

The court's factual findings only addressed the issue of personal jurisdiction, not the merits. After still more motion practice, the parties began merits discovery. As part of that process, both sides have asked the court to issue letters of request to obtain discovery from various foreign jurisdictions. In total, the parties have sought twenty-one letters of request. Lilly has sought three. The Foundation has sought eighteen.

On August 1, 2022, Lilly moved for a letter of request to the central authority of Switzerland to obtain the Discovery Materials, which are in the possession of the Prosecutor's Office of the Canton of Zurich (the "Zurich Prosecutor's Office"). Dkt. 375. The motion explained that in early 2018, the Zurich Prosecutor's Office conducted a criminal investigation into Neupert and one of his personal assistants, Susanne Aalam, for "forgery of public documents and potential suppression of documents." *Id.* at 15. As part of that investigation, prosecutors searched Neupert's law firm and seized electronic devices belonging to Neupert and Aalam.

A Swiss court subsequently determined that the seizure was proper and that

7

"[r]easonable suspicion of a crime was given." Dkt. 375, Ex. 4 at 4. The court also found that the seizure of the Discovery Materials complied with the requirements of proportionality imposed by Swiss law and were closely related to the case. *Id.* ¶¶ 4.2, 4.4

Lilly has moved for the issuance of a letter of request seeking production of all of the Discovery Materials. Alternatively, she seeks production of only those Discovery Materials that touch on topics at the heart of this litigation. *Id.* at 16–17.

The Foundation opposes Lilly's request. Neupert has not responded to the motion.

## II. LEGAL ANALYSIS

Lilly seeks to obtain the Discovery Materials using the procedures authorized under the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, which opened for signature on March 18, 1970. 23 U.S.T. 2555, T.I.A.S. No. 7444 (Codified as 28 U.S.C. § 1781. "This Convention—sometimes referred to as the 'Hague Convention' or the 'Evidence Convention'—prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 524 (1987). To that end, Article 1 states:

> In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.

Hague Convention, *supra*, art. 1.

A party's use of the Hague Convention is neither mandatory nor exclusive. "[T]he optional Convention procedures are available whenever they will facilitate the gathering

8

of evidence by the means authorized in the Convention." *Societe Nationale*, 482 U.S. at 541; *accord Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003) ("The Hague Evidence Convention serves as an alternative or 'permissive' route to the Federal Rules of Civil Procedure for the taking of evidence abroad from litigants and third parties alike.").

The party seeking a letter of request bears the burden of persuading the trial court that its issuance is warranted. *Tulip Computers*, 254 F. Supp. 2d at 427. Initially, the discovery sought must be permissible under the law of the requesting jurisdiction such that production would be ordered by the requesting court. *See* Hague Convention, *supra*, art. 1 (noting that the request must be "in accordance with the provisions of the law of [the requesting] State"). For purposes of a Delaware proceeding, that means the discovery must fall within the scope of Rule 26.

Rule 26(b)(1) states:

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, including the existence, description, nature, custody condition and location of any documents, electronically stored information, or tangible things and the identify and location of persons having knowledge of any discoverable matter.

Ct. Ch. R. 26(b)(1).

"The scope of discovery pursuant to Court of Chancery Rule 26(b) is broad and far-reaching . . . ." *Cal. Pub. Emps. Ret. Sys. v. Coulter*, 2004 WL 1238443, at *1 (Del. Ch. May 26, 2004) (citation omitted). "[T]he spirit of Rule 26(b) calls for all relevant information, however remote, to be brought out for inspection not only by the opposing

9

party but also for the benefit of the Court . . . ." *Boxer v. Husky Oil Co.*, 1981 WL 15479, at *2 (Del. Ch. Nov. 9, 1981). Relevance "must be viewed liberally," and discovery into relevant matters should be permitted if there is "any possibility that the discovery will lead to relevant evidence." *Loretto Literary & Benevolent Inst. v. Blue Diamond Coal Co.*, 1980 WL 268060, at *4 (Del. Ch. Oct. 24, 1980). "Discovery is called that for a reason. It is not called 'hide the ball.'" *Klig v. Deloitte LLP*, 2010 WL 3489735, at *7 (Del. Ch. Sept. 7, 2010). Consequently, when a party objects to providing discovery, "[t]he burden is on the objecting party to show why and in what way the information requested is privileged or otherwise improperly requested."[4] Generic and formulaic objections "are insufficient." *Van de Walle*, 1984 WL 8270, at *2.

For purposes of a letter of request, determining that the discovery would be permissible if the responding party were within the court's jurisdiction is necessary but not sufficient. The court must conduct an additional level of analysis that takes into account the trans-jurisdictional nature of the request. The Supreme Court of the United States has described the general nature of the inquiry as follows:

---

[4] *Van de Walle v. Unimation, Inc.*, 1984 WL 8270, at *2 (Del. Ch. Oct. 15, 1984); *accord Prod. Res. Gp., L.L.C. v. NCT Gp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004) (Strine, V.C.) (citation omitted). A more accurate description of the discovery process is "a practical form of burden-shifting." *In re Appraisal of Dole Food Co., Inc.*, 114 A.3d 541, 551 (Del. Ch. 2014). "[T]he party seeking the information must first provide some minimal explanation as to why the discovery satisfies the requirements of relevance and conditional admissibility." *Id.* Once the party seeking discovery has met that initial burden, "[i]t is then up to the party opposing discovery to show that the explanation is erroneous" or that there are other reasons why discovery should be limited or foreclosed. *Id.*

American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration. In addition, we have long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation. American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.

*Societe Nationale*, 482 U.S. at 546 (internal citations omitted).

The *Societe Nationale* decision recommended that courts consider the following factors when evaluating whether to issue a letter of request:

- the importance to the litigation of the documents or other information requested;

- the degree of specificity of the request;

- whether the information originated in the United States;

- the availability of alternative means of securing the information; and

- the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28.

During this stage, the requesting party again bears the burden of showing that the issuance of a letter of request is warranted, but "[t]hat burden is not great." *Pronova*

11

*BioPharma Norge AS v. Teva Pharms. USA, Inc.*, 708 F. Supp. 2d 450, 452 (D. Del. 2010).

According to a leading treatise, "[a] court should make use of the Convention procedures whenever it is determined on a case-by-case basis that their use will facilitate discovery." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2005.1 at 70 (3d ed. 2010), Westlaw (database updated Apr. 2022). Resort to the Hague Convention generally will be appropriate when the responding party is not a party to the litigation, has not agreed to respond to discovery voluntarily, and can be compelled to respond through Hague Convention procedures.[5]

---

[5] *See, e.g.*, *Cosmo Techs. Ltd. v. Actavis Lab'ys FL, Inc.*, 2016 WL 4582498, at *2 (D. Del. Aug. 31, 2016) (issuing letter of request where witness was located in Italy and possessed evidence that was relevant and unlikely to be duplicative); *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.,* 2013 WL 12291616, at *3 (S.D. Ind. Apr. 26, 2013) ("It is undisputed that Dr. Calvert is a citizen of the United Kingdom. Defendants represent that Dr. Calvert refused to make himself available for deposition or to produce any documents. In these circumstances, Defendants' resort to the Hague Convention appears entirely appropriate."); *Metso Mins. Inc. v. Powerscreen Int'l Distrib. Ltd.*, 2007 WL 1875560, at *3 (E.D.N.Y. June 25, 2007) (finding that use of Hague Convention procedures was warranted where witness had relevant evidence and "the procedures of the Hague Evidence Convention may be the only means by which the requested discovery may be obtained given the fact that Mr. Rafferty is a citizen of Northern Ireland, who is not a party to this action and is similarly not subject to the jurisdiction of this court"); *Tulip Computers*, 254 F. Supp. 2d at 474 ("Resort to the Hague Evidence Convention in this instance is appropriate since both Mr. Duynisveld and Mr. Dietz are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are citizens of the Netherlands, and are not otherwise subject to the jurisdiction of the Court."); *Orlich v. Helm Bros., Inc.*, 160 A.D.2d 135, 143 (N.Y.A.D. 1990) ("When discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Convention, which encompasses principles of international comity, is virtually compulsory.").

**A.     The Hague Convention Is An Available Method.**

As a threshold matter, a court can issue a letter of request to a country that has signed the Hague Convention. Switzerland is a signatory, so the Hague Convention provides one option for discovery.

At times, parties resisting a motion seeking a letter of request will show that the signatory nation executed the Hague Convention subject to reservations.[6] No one has identified any reservations that are pertinent to this case.

**B.     The Court Would Order Production If The Discovery Were Within Its Control.**

As discussed above, the first step in evaluating whether to issue a letter of request asks whether the court would order production if the materials were subject to the court's jurisdiction. Lilly has made two alternative proposals, one broader and one narrower. If the Discovery Materials were subject to the court's jurisdiction, then the court would order production under the narrower framework. That proposal therefore establishes the appropriate scope for the letter of request.

In her initial proposal, Lilly asks for production of "[c]omplete forensic copies of all hard drives or internal memory on all computers and other electronic devices belonging to Dieter Neupert or Susanne Aalam, which are currently in the possession of the Zurich

---

[6] *See, e.g.*, *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1167–68 (D. Or. 2015) (discussing Germany's reservations to the Hague Convention); *Eli Lilly,* 2013 WL 12291616, at *2 (discussing the United Kingdom's reservations to the Hague Convention); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 56–57 (D.D.C. 2000) (discussing Belgium's reservations to the Hague Convention).

Prosecutor's Office." Dkt. 375 at 16–17 (the "Broad Proposal"). The Broad Proposal would require production of all of the Discovery Materials, regardless of their relevance to this litigation.

As an alternative, Lilly asks for production of

electronic records on all computers and other electronic devices belonging to Dieter Neupert or Susanne Aalam, which are currently in the possession of the Zurich Prosecutor's Office, and which pertain to:

    a.  Côte D'Azur;

    b.  Filings with the Delaware Secretary of State;

    c.  The Deed of Assignment . . .;

    d.  Proceedings before the English Serious Organized Crime Agency ("SOCA") involving the Deed of Assignment.

*Id.* at 17 (the "Narrow Proposal").

As discussed above, discovery must be "relevant to any party's claim or defense." Ct. Ch. R. 26(b)(1). If the court had jurisdiction over the Discovery Materials, then the court would limit production to those issues that are relevant to this proceeding.

Under the Rule 26(b)(1) standard, the Broad Proposal is not tied to issues that are relevant to the case. The Broad Proposal seeks production of the Discovery Materials in their entirety, regardless of subject matter. The risk is admittedly limited, because as a Swiss court has held, the Zurich Prosecutors' Office conducted a focused investigation. Dkt. 375, Ex. 4 ¶ 2 ("Both in the court order as well as in the office search and provisional seizure, attention had been paid that exclusively evidence was taken, which could prove to be directly relevant."). Nevertheless, the Broad Proposal is not tied to the issues relevant to the case, and it therefore falls short under Rule 26(b)(1).

14

By contrast, the Narrow Proposal ties the production to the topics at issue in this proceeding. It identifies four categories of information that relate to materials at the heart of this case. Under the Narrow Proposal, the production is limited to relevant material.

As discussed above, discovery also must be "proportional to the needs of the case." Ct. Ch. R. 26(b)(1). Neither of Lilly's proposals raise any issues involving proportionality. The Discovery Materials already present a finite and easily accessible scope of production.

As discussed above, discovery extends to "any non-privileged matter." Ct. Ch. R. 26(b)(1). Neupert has not responded to Lilly's motion and has not taken any position on privilege. The Foundation objects that the letter of request will result in the production of privileged material simply because Neupert is a lawyer. Dkt. 393 ¶ 20. As a threshold matter, privileged communications involving Neupert's clients are not likely to be a problem because of the focused nature of the investigation. As a Swiss court has found, the Zurich Prosecutor's Office tailored its seizure to narrowly focus on its forgery investigation. Dkt. 375, Ex. 4 ¶ 2. The seizure involved only documents that were directly relevant to its investigation and from the narrow timeframe regarding the tortious act. *Id.*

Privilege also is not likely to be at issue because of the crime/fraud exception. Delaware Rule of Evidence 502 shields from discovery any "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." D.R.E. 502. But the rule establishes an exception when "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." *Id.* 502(d)(1).

15

The premise behind the crime-fraud exception is "that when a client seeks out an attorney for the purpose of obtaining advice that will aid the client in carrying out a crime or a fraudulent scheme, the client has abused the attorney-client relationship and stripped that relationship of its confidential status." *Princeton Ins. Co. v. Vergano*, 883 A.2d 44, 55 (Del. Ch. 2005) (Strine, V.C.). For the crime-fraud exception to apply, the client must intend to use the communications "as a basis for criminal or fraudulent activity, whether or not that criminal or fraudulent intent ever comes to fruition." *In re Sutton*, 1996 WL 659002, at *11 (Del. Super. Aug. 30, 1996). "To invoke the crime-fraud exception, . . . the proponent of the exception must make a prima facie showing that the confidential communications were made in furtherance of a crime or fraud.". *Buttonwood Tree Value P'rs, L.P. v. R.L. Polk & Co., Inc.*, 2018 WL 346036, at *6, *8 (Del. Ch. Jan. 10, 2018) (cleaned up)).

During a previous phase of this case, this court held that Neupert's actions in connection with the takeover of the LLC bore sufficient hallmarks of fraudulent and potentially criminal conduct to overcome the privilege under the crime/fraud exception. Dkt. 174 at 46–48. Under Lilly's Narrow Proposal, the letter of request only will seek a portion of the Discovery Materials that relate directly to issues in the case. Those matters are likely to fall within this court's ruling regarding the crime/fraud exception such that they are subject to production without regard to privilege.

Consequently, if the Discovery Materials were subject to this court's jurisdiction, then the court would order production in conformity with the Narrow Proposal.

16

**C.     A Letter Of Request Is Warranted Notwithstanding The Burden On A Foreign Court System.**

Because Lilly seeks the issuance of a letter of request to the central authority of a foreign jurisdiction, it is not enough for the court to find that it would order production of the Discovery Materials that fall within the Narrow Proposal. The court must engage in additional analysis to determine whether to impose a burden on the courts in a foreign jurisdiction. In this case, Lilly has made the necessary showing.

In *Societe Nationale*, the Supreme Court of the United States identified five factors to consider when determining whether to issue a letter of request. To reiterate, the five factors are:

- the importance to the litigation of the documents or other information requested;

- the degree of specificity of the request;

- whether the information originated in the United States;

- the availability of alternative means of securing the information; and

- the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Societe Nationale*, 482 U.S. at 544 n.28; *see* Restatement (Third) of Foreign Relations Law §§ 441–442 (Am. L. Inst. 1987), Westlaw (database updated Oct. 2022). Evaluating these factors "requires a particularized analysis of the facts of a case, the sovereign interests involved, and the likelihood that resorting to the Hague Convention will prove effective." *Ingenico Inc. v. Ioengine, LLC*, 2021 WL 765757, at \*2 (D. Del. Feb. 26, 2021).

17

### 1. The Importance Of The Documents Requested

The first factor requires an assessment of the importance of the documents or other information to the litigation. *Societe Nationale*, 482 U.S. at 544 n.28. This factor "calls on the court to consider the degree to which the information sought is more than merely relevant under the broad test generally for evaluating discovery requests." *In re Activision Blizzard, Inc.*, 86 A.3d 531, 544 (Del. Ch. 2014). To meet its burden, the requesting party must go beyond "conclusory assertions" that the evidence sought is relevant to the litigation. *Ingenico*, 2021 WL 765757, at \*3. Production is favored where the requesting party shows that the evidence sought is "directly probative to the issues of the case." *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 204 (S.D.N.Y. 2013) (quoting *Reino de Espana v. Am. Bureau of Shipping*, 2005 WL 1813017, at \*7 (S.D.N.Y. Aug. 1, 2005)). But the requesting party need not show the requested documents are vital to the litigation. *Id.* Here, Lilly has shown the proposed discovery directed to Neupert meets the test.

The Discovery Materials that fall within the Narrow Proposal are highly likely to contain evidence that is directly probative to the issues in this case. The Narrow Proposal only seeks Discovery Materials that relate to four targeted issues: (i) Côte d'Azur; (ii) filings with the Delaware Secretary of State; (iii) the Deed of Assignment; and (iv) proceedings before SOCA involving the Deed of Assignment. Dkt. 375 at 17. Each of these issues touches on an important subject for this case. For example, the parties dispute who owned the LLC and Lilly avers that Neupert and one of his secretaries fabricated corporate records and a power of attorney that enabled Neupert to seize control of Côte d'Azur.

18

The timeframe is also limited. The Discovery Material covers a period from May 1, 2015, to March 1, 2017. Dkt. 409 at 4. That is also the central time period for this case. *See Jurisdictional Decision*, 2019 WL 719000, at \*18–21.

The request for assistance is appropriately targeted in terms of scope. It pertains only to Neupert and Aalam. Dkt. 375, Ex. 4 ¶ 4.4 ("Primarily, the Accused and his secretary are directly affected by the investigation actions in dispute."). Neupert is the central figure in both proceedings. In this case, he is one of only two defendants.

Both proceedings also involve allegations that Neupert worked with one of his assistants to fabricate documents. In this case, electronic records of emails between Neupert and an assistant supported a finding that Neupert fabricated corporate resolutions and a stock certificate. *Id.* at \*21. The electronic records in the possession of the Zurich Prosecutor's Office may contain drafts and notes relevant to these subjects.

Neupert has not responded to Lilly's motion. Only the Foundation filed an opposition. The Foundation has disputed the scope of the Broad Proposal, but not the Narrow Proposal. As to the latter, the Foundation concedes that the request "seeks information which may prove relevant to this proceeding." Dkt. 393 ¶ 28.

Lilly has successfully shown that the Discovery Materials are likely to be probative on issues in this case. The first factor cuts in her favor.

### 2. The Degree Of Specificity Of The Request

The second factor directs the court to consider the degree of specificity of the request. *Societe Nationale*, 482 U.S. at 544 n.28. A request must be sufficiently specific to avoid confronting the producing party with "unnecessary, or unduly burdensome

19

discovery" that places the producing party "in a disadvantageous position." *Id.* at 546; *see Activision*, 86 A.3d at 545. The second factor's specificity requirement interacts with the first factor's emphasis on importance. *See Ingenico*, 2021 WL 765757, at *4. A sweeping document request both lacks specificity and is likely to capture evidence of limited importance. *See id.* (finding that a "conclusory assertion" that the requested evidence was relevant failed the first and second factors of the five-factor test).

As this decision has discussed, the Narrow Proposal is targeted and specific. Lilly has met her burden under the second factor.

### 3. Whether The Information Originated In The United States

The third factor directs the court to consider "whether the requested information originated in the United States." *Societe Nationale*, 482 U.S. at 544 n.28. This factor is primarily concerned with helping a court evaluate whether discovery can be obtained either under the court's rules or under the Hague Convention. *See Catalano v. BMW of N. Am., LLC*, 2016 WL 3406125, at *7 (S.D.N.Y. June 16, 2016) (evaluating whether documents located in Germany should be obtained under the Hague Convention even though defendant was a party to the case and subject to discovery under the Federal Rules of Civil Procedure); *Activision*, 86 A.3d at 546 (evaluating whether the Hague Convention should be used to obtain documents that were located in France, even though the defendant was a party to the case and subject to party discovery). Although framed in terms of where the information originated, this factor is actually concerned with the physical location of the requested information. *See Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 247 (S.D.N.Y. 2010). If the requested information is located in a foreign jurisdiction where

20

local laws would impose additional compliance obligations on a producing party, then this factor may favor the use of the Hague Convention so that the central authority in that jurisdiction can take those obligations into account. In an extreme case where compliance would be particularly burdensome or contrary to law, this factor may counsel in favor of not issuing a letter of request at all.

In this case, the Discovery Materials originated and currently are located in Switzerland. But those facts are largely irrelevant to the balancing of interests, because Lilly is already proceeding by way of letter of request. Moreover, as discussed in the next section, that method likely provides the only means of obtaining the discovery. No one has identified any Swiss legal requirements that would limit or prevent production. Instead, Lilly has shown that under Swiss law, civil litigants can obtain information like the Discovery Materials. The third factor supports the issuance of a letter of request.

4.      **The Availability Of Alternative Means Of Securing The Information**

The fourth factor looks to whether alternative means of securing the requested information are available. *Societe Nationale*, 482 U.S. at 544 n.28. If there is an alternative means of obtaining the information that will generate the same or substantially equivalent discovery without burdening a foreign court system, then that fact counsels in favor of using the alternative method. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992); *Milliken*, 758 F. Supp. 2d at 247. If there is no alternative source, then this factor favors issuing the letter of request. *Activision*, 86 A.3d at 546. If the party from whom materials are requested has refused to comply with the alternative method of production, then this factor again favors issuing the letter of request. *Ingenico*,

21

2021 WL 765757, at *3. When the Hague Convention is the only feasible means of acquiring the evidence, resort to a letter of request is "virtually compulsory." *Liqwd, Inc. v. L'Oréal USA, Inc.*, 2018 WL 11189616, at *2 (D. Del. Nov. 16, 2018).

Lilly contends that the Hague Convention is the only feasible way for her to procure the Discovery Materials because the Zurich Prosecutor's Office is not a party to this case or otherwise subject to the court's jurisdiction. Dkt. 375 at 12. That is true, but it is only a partial answer, because Neupert himself is a party. Normally, the tools of discovery in litigation in an American court are more effective than the Hague Convention.[7] They also do not impose a burden on a court in another country. *See Metso Mins.*, 2007 WL 1875560, at *1 ("It is the duty of this court to carefully scrutinize applications [for letters of request] to attempt to minimize the burden placed on the foreign judiciary by virtue of such an application.").

Lilly has shown that she is unlikely to be able to obtain the material sought from Neupert. In the first instance, it is not clear that Neupert has the Discovery Materials. A Swiss court decision states that during a search of Neupert's offices, the investigators

---

[7] *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 300 (3d Cir. 2004) ("[I]n many situations, the Convention procedures would be unduly time-consuming and expensive, and less likely to produce needed evidence than direct use of the Federal Rules."); *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, 2008 WL 11355018, at *5 (S.D. Ohio Sept. 19, 2008) (noting that the Hague Convention is "more restrictive" than "obtain[ing] discovery through the Federal Rules of Civil Procedure"); *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 310 (N.D. Ill. 1997) ("[N]o useful purpose would be served to substitute effective and efficient discovery under the Federal Rules with the less than certain and burdensome Convention procedure.").

seized the Discovery Materials. It does not talk about making copies. Dkt. 375, Ex. 4 ¶ A. It is therefore reasonable to infer that the Zurich Prosecutor's Office is the sole possessor of the Discovery Materials. Serving document requests on Neupert will not result in the production of the Discovery Materials. The only means of obtaining them is through a letter of request to the Zurich Prosecutor's Office.

But even if Neupert had the Discovery Materials, Lilly has demonstrated that he is unlikely to produce them. As a practical matter, Neupert has stopped participating in the litigation. He has done only the bare minimum to stave off a default judgment.

The Foundation argues that Neupert previously participated in the case and could be compelled to produce the documents. In reality, the extent of Neupert's willingness to participate in this litigation has evolved through three distinct phases.

During the first phase, after Lilly filed the lawsuit, Neupert controlled Côte d'Azur as its sole director and sole officer. He retained counsel who jointly represented Côte d'Azur and himself. He and Côte d'Azur answered the complaint and asserted affirmative defenses, and he caused Côte d'Azur to file a counterclaim seeking to establish the validity of the Deed of Assignment. Dkt. 12. The jointly engaged law firm both served and responded to discovery on behalf of Côte d'Azur and Neupert. *See* Dkts. 21, 28–29. The Foundation is correct that Neupert participated in the litigation during that phase, but his participation did not last long.

During the first phase of this litigation, contemporaneous documents emerged that contradicted the positions that Neupert and Côte d'Azur were taking. On March 14, 2017, Neupert resigned from all of his positions with the Corporation. Dkt. 75 ¶ 3. The law firm

23

representing Neupert and the Corporation conveyed that fact to the court in April 2017 in the law firm's motion to withdraw from representing Neupert, which the court granted. Dkt. 76. The law firm subsequently withdrew from representing Côte d'Azur and was replaced by successor counsel. Dkt. 218. Neupert never retained successor counsel. To the extent he has participated, he has done so *pro se*.

After the withdrawal of his former counsel, the second phase began. During this phase, Neupert did not participate. Even though he possessed evidence that was plainly relevant to the question of whether the Foundation was subject to jurisdiction in this court, Neupert refused to be deposed. He also declined to appear at the evidentiary hearing. As a result, the court drew inferences in Lilly's favor and adverse to the Foundation based on any relevant testimony that Neupert reasonably could have offered. Dkt. 173 at 68–71.

After the court's rulings on the question of jurisdiction, this case entered a third phase. During this phase, Neupert has participated solely to the extent necessary to avoid a default judgment. Initially, Neupert failed to answer Lilly's amended complaint, prompting Lilly to move for a default judgment. Once Lilly filed her motion, Neupert responded to the amended complaint with a barebones, one-page motion to dismiss that merely incorporated by reference the Foundation's arguments. *See* Dkts. 231–32. The Foundation's counsel served it on Neupert's behalf. Dkt. 232. After the court denied the defendants' motions to dismiss, Neupert filed an answer and asserted affirmative defenses. Dkt. 257. His pleading paralleled the positions that the Foundation took, and the Foundation's counsel submitted Neupert's answer on his behalf. Dkt. 258.

Otherwise, Neupert has failed to participate:

24

- On August 9, 2021, Lilly noticed Neupert's deposition. Dkt. 304. There is no indication that the deposition took place.

- On August 10, 2021, Lilly filed a notice that she served interrogatories on Neupert. Dkt. 305. Neupert has never filed a notice evidencing that he responded.

- Neupert has not appeared at any of the hearings that this court has conducted.

- Neupert has not responded to Lilly's motion for a letter of request seeking the Discovery Materials, which were seized from his office.

Given Neupert's performance to date, the court concludes that resort to the Hague Convention is the only effective means by which Lilly can obtain the Discovery Materials that are subject to the Narrow Request. This factor supports granting the motion.

To rebut Lilly's argument, the Foundation contends, on Neupert's behalf, that Lilly has failed to explain why further discovery requests on Neupert would not be the ideal means of securing the Discovery Materials. Dkt. 393 ¶ 4. The Foundation argues further that Neupert already made a sufficient production of documents. *Id.* This argument is incorrect. As previously explained, Neupert has refused to participate in this litigation in any meaningful way. He has repeatedly refused to comply with discovery requests or take any action above the bare minimum required to avoid a default judgment. Neupert cannot pick and choose when to participate in this litigation as a means of frustrating Lilly's requests.

Lilly thus has shown she likely has no alternative means of procuring the Discovery Materials. The fourth factor favors production.[8]

### 5. The Competing Interests Of The Sovereigns Involved

The final factor is a balancing of the competing interests of the sovereigns involved. *Societe Nationale*, 482 U.S. at 544 n.28. Under this factor, the court weighs any interest that the United States or the forum state has in obtaining production of the information against any interest that the foreign state has in not providing discovery. *Activision*, 86 A.3d at 547. When considering the interests of the United States, the court may take into account the requesting party's "important interests in developing its claims and defenses." *Ingenico*, 2021 WL 765757, at *3. When considering the interests of a foreign state, the court should take into account any foreign law that limits production. *See Activision*, 86 A.3d at 547 (giving consideration to French laws regarding data privacy).

This factor is most important where the litigation implicates national security concerns or national economic policies.[9] No such concern is implicated here. This is a civil

---

[8] Discovery from Aalam does not provide a better alternative. She is not a party to this litigation, and she is located in Switzerland. A letter of request would have to be issued to her as well, and there is no reason to think that she currently possesses the Discovery Materials.

[9] *See, e.g.*, *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 and 50 U.S.C. § 1705*, 381 F. Supp. 3d 37, 72 (D.D.C. 2019) ("[T]he United States' interest in this case pertains to national security . . . . Consequently, non-enforcement would undermine a critical national interest."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 54 (E.D.N.Y. 2010) (noting the fifth factor is "considered most important by several courts" where "a case involv[ed] violations of antitrust laws whose enforcement is essential to the country's interests in a competitive economy"); *Strauss v. Credit*

case involving private parties. Where the litigants are all private parties, this factor is of secondary importance. *See Milliken*, 758 F. Supp. 2d at 248 ("Here, the underlying interest—collection of a judgment by a private party—is not so dramatic.").

Although it is difficult to say that the United States has a significant interest in this dispute, the interests of the forum state are pertinent. "Delaware has a substantial interest in providing an effective forum for litigating disputes involving the internal affairs of Delaware [business entities]." *Activision*, 86 A.3d at 547. "Delaware's legitimacy as a chartering jurisdiction depends on it." *NACCO Indus., Inc. v. Applica, Inc.*, 997 A.2d 1, 26 (Del. Ch. 2009). One of the central issues in this case involves whether Neupert and the Foundation used fabricated documents to mislead a Delaware registered agent, make false filings with the Delaware Secretary of State, and seize control of a Delaware entity. Although Lilly is litigating as a private plaintiff, that fact does not diminish Delaware's interest. *Activision*, 86 A.3d at 547. Delaware has an interest in providing a means for Lilly to pursue her claims.

To counterbalance Delaware's interest in providing a forum for litigating disputes involving Delaware entities, the Foundation offers two ostensibly competing Swiss interests. The Foundation has not cited any Swiss statute or directive that would limit

---

*Lyonnais, S.A.*, 249 F.R.D. 429, 443–44 (E.D.N.Y. 2008) ("When that interest [of adjudicating matters before its courts] is combined with the United States's [sic] goals of combating terrorism, it is elevated to nearly its highest point, and diminishes any competing interests of the foreign state." (internal quotation marks omitted)).

production of the Discovery Materials. Instead, the record shows that civil litigants can access information like the Discovery Materials.

The first ostensible interest is Switzerland's concern for maintaining the attorney-client privilege. This decision has already analyzed the privilege issue and demonstrated that the letter of request is unlikely to implicate privileged material. Regardless, the Hague Convention contemplates that a central authority can take into account local privilege law by providing that "[i]n the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence . . . under the law of the State of execution." Hague Convention, *supra,* art. 11. This court's decision to issue a letter of request does not impair Switzerland's ability to protect privileged information, if there is any.

The second ostensible interest is "the danger of instrumentalizing criminal law for civil law purposes." Dkt. 393, Ex. A ¶ 77. The Foundation has submitted a court decision that expresses concern, but the same decision notes that the Zurich Prosecutor's Office has previously provided civil litigants with electronic evidence. Dkt. 409, Ex. B ¶ 42. In any event, the Swiss central authority can refuse to execute the Letter of Request if "the State addressed considers that its sovereignty or security would be prejudiced thereby." Hague Convention, *supra*, art. 12.

There accordingly does not appear to be any conflict between the interests of competing sovereigns. Delaware has an interest in obtaining information necessary for the litigation of a civil dispute. Switzerland does not appear to have any competing interest. The fifth factor therefore supports the issuance of the letter of request.

### 6. The Overarching Balancing

The court must perform an overarching balancing of the five factors identified in *Societe Nationale*. All of the factors favor the issuance of a letter of request, either strongly or weakly. No factor counsels against the issuance. Lilly has therefore carried her burden.

## III. CONCLUSION

Lilly has shown that issuance of the letter of request is warranted, albeit one limited to the materials requested in the Narrow Proposal. To that extent, the court will grant her motion.

Lilly's existing motion predated this court's decision dismissing the Foundation's counterclaims. To avoid confusion, Lilly will submit a new letter of request that removes references to the Foundation's counterclaims and limits the materials sought to the materials requested in the Narrow Proposal.